UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INFORMED CONSENT ACTION NETWORK,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>U.S. FOOD AND DRUG ADMINISTRATION,<br><br>　　　Defendant. | Civil Action No. 22-3572 (CKK) |

**MEMORANDUM OPINION & ORDER**
(August 30, 2024)

This lawsuit arises from a Freedom of Information Act ("FOIA") request made by Plaintiff Informed Consent Action Network ("Plaintiff" or "ICAN") to Defendant Food and Drug Administration ("Defendant" or "FDA"). *See generally* Compl., ECF No. 1. In its FOIA request, Plaintiff sought copies of autopsy reports "concerning any VAERS-reported deaths following COVID-19 vaccination." *Id.*, Ex. 1, ECF No. 1-1, at 8.

Before the Court are Defendant's [21] Motion for Summary Judgment and Plaintiff's [22] Cross-Motion for Summary Judgment. Upon consideration of the briefings,[1] the relevant legal authorities, and the record as a whole, the Court shall **GRANT IN PART** and **DENY IN PART**

---

[1] The Court's consideration has focused on the following documents:
- Plaintiff's Complaint ("Compl."), ECF No. 1, and accompanying exhibits;
- Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Def.'s Mot."), ECF No. 21-1, and accompanying attachments;
- Plaintiff's Combined Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Cross-Mot."), ECF No. 22-1, and accompanying attachments;
- Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply in Support of its Motion for Summary Judgment ("Def.'s Reply"), ECF No. 23; and
- Plaintiff's Reply in Support of its Cross-Motion for Summary Judgment ("Pl.'s Reply"), ECF No. 25.

1

Defendant's Motion for Summary Judgment, and shall **GRANT IN PART** and **DENY IN PART** Plaintiff's Cross-Motion for Summary Judgment.

### I. BACKGROUND

ICAN is a "not-for-profit news media organization whose mission is to raise public awareness about vaccine safety." Def.'s SMF, ECF No. 21-2, ¶ 1; Pl.'s SMF, ECF No. 22-3, ¶ 1. On November 29, 2021, ICAN submitted a FOIA request to the FDA, requesting: "Copies of autopsy reports concerning any VAERS-reported deaths following COVID-19 vaccination." Def.'s SMF ¶ 2; Pl.'s SMF ¶ 2; *see generally* Compl., Ex. 1 at 8. On December 1, 2021, the FDA acknowledged receipt of ICAN's FOIA request. Compl., Ex. 2. On September 23, 2022, the FDA denied Plaintiff's FOIA request in full, citing FOIA Exemptions 3 and 6, and the National Childhood Vaccine Injury Act, as the basis for its denial. Def.'s SMF ¶ 3; Pl.'s SMF ¶ 3; *see generally* Compl., Ex. 3.

ICAN filed an administrative appeal on October 7, 2022, arguing that the FDA failed to conduct an adequate search for potentially responsive records and improperly withheld records under FOIA Exemptions 3 and 6. Def.'s SMF ¶ 4; Pl.'s SMF ¶ 4; *see generally* Compl., Ex. 1 at 2–6. On October 11, 2022, the FDA acknowledged receipt of ICAN's administrative appeal and informed ICAN that its appeal falls under "unusual circumstances" in that the FDA needed to "consult with another office that has substantial interest in the determination of the appeal." Def.'s SMF ¶ 5; Pl.'s SMF ¶ 5; *see generally* Compl., Ex. 2, ECF No. 1-2. Following the submission of ICAN's complaint before this Court, ICAN's FOIA appeal was "considered withdrawn pursuant to agency practice." Def.'s SMF ¶ 7; Brockner Ryan Decl., ECF No. 21-3, ¶ 7.

Plaintiff initiated this lawsuit on November 23, 2022, alleging Defendant failed to make a timely determination on Plaintiff's appeal, failed to establish the adequacy of its search for responsive records, and improperly withheld responsive records. *See generally* Compl. In July 2023, Defendant filed the pending Motion for Summary Judgment. *See generally* Def.'s Mot. In support of its motion, Defendant includes the declarations of Beth Brockner Ryan, Branch Chief for the Access Litigation and Freedom of Information Branch, Center for Biologics Evaluation and Research; John Hyder, Science Disclosure Analyst and Subject Matter Expert for the Division of Disclosure and Oversight Management; and Dr. Narayan Nair, Director for the Division of Pharmacovigilance within the Office of Biostatistics and Pharmacovigilance. *See* Brockner Ryan Decl.; Hyder Decl., ECF No. 21-4; Nair Decl., ECF No. 21-5.

In response, Plaintiff filed the pending Cross-Motion for Summary Judgment, challenging Defendant's claimed FOIA exemption and segregability. *See generally* Pl.'s Cross-Mot. In support of its motion, Plaintiff includes the declaration of Elizabeth Brehm, attorney for ICAN, and a redacted copy of an autopsy report. *See* Brehm Decl., ECF No. 22-2; Pl.'s Cross-Mot., Ex. A, ECF No. 22-2, at 4–11. With both motions fully briefed, the Court turns to their resolution.

## II.  LEGAL STANDARD

Congress enacted the Freedom of Information Act, 5 U.S.C. § 552, to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted). Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and private interests could be harmed by release of certain types of information." *Critical Mass Energy Project v. Nuclear Regul. Comm'n*, 975 F.2d 871, 872 (D.C. Cir 1992) (en banc) (citation omitted), *cert. denied*, 507 U.S. 984 (1993). To that end, FOIA "requires federal agencies to make

Government records available to the public, subject to nine exemptions for categories of material." *Milner v. Dep't of Navy*, 562 U.S. 562, 564 (2011).  Ultimately, "disclosure, not secrecy, is the dominant objective of the act."  *Rose*, 425 U.S. at 361.  For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed."  *Milner*, 562 U.S. at 565 (citations omitted).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (PLF) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007) (PLF)).  "The agency is entitled to summary judgment if no material facts are genuinely in dispute and the agency demonstrates that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information."  *Prop. of the People, Inc. v. Off. of Mgmt. & Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (RC) (citation omitted).

The burden is on the agency to justify its response to the plaintiff's request.  5 U.S.C. § 552(a)(4)(B).  "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith."  *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation omitted). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone."  *Am. C.L. Union v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted).  "Uncontradicted, plausible affidavits

4

showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011) (citation omitted).

### III.  DISCUSSION

In its motion, Defendant moves for summary judgment as to: (1) the adequacy of its search; (2) its claimed exemption (FOIA Exemption 6); and (3) segregability.  *See generally* Def.'s Mot.  Plaintiff's cross-motion challenges the propriety of Defendant's reliance on Exemption 6, as well as the issue of segregability.  *See generally* Pl.'s Cross-Mot.  Plaintiff does not challenge the adequacy of Defendant's search for responsive records to Plaintiff's FOIA request.  *See generally id.*  Accordingly, the Court shall grant summary judgment for Defendant as to the adequacy of its search.  Although the Court cannot find with the current record that Defendant was justified in invoking Exemption 6 to withhold the autopsy reports in their entirety, as explained below, the Court shall briefly outline the privacy and public interests at stake.

**A. FOIA Exemption 6**

In this case, Defendant invoked Exemption 6 to justify withholding 539 autopsy reports in full.  Def.'s Mot. at 12–32; Hyder Decl. ¶ 11.

FOIA Exemption 6 protects information contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]"  5 U.S.C. § 552(b)(6).  The term "similar files" is construed broadly, and it is "intended to cover detailed Government records on an individual which can be identified as applying to that individual."  *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (citation omitted).  "The threshold inquiry is 'fairly minimal,' such that '[a]ll information which applies to a particular individual is covered by Exemption 6, regardless of the type of file in which it is contained.'"

5

*Concepcion v. FBI*, 606 F. Supp. 2d 14, 35 (D.D.C. 2009) (RMU) (quoting *Wash. Post Co. v. Dep't of Health & Human Services*, 690 F.2d 252, 260 (D.C. Cir. 1982)).

The Court finds that the autopsy reports withheld by the FDA constitute, at a minimum, "similar files." Patently, each autopsy report contains information attributable to a specific individual. *See* Hyder Decl. ¶ 12 (stating the reports contain, *inter alia*, decedent's name, age, race, sex, and date of birth); *Wash. Post Co.*, 690 F.2d at 260 ("All information which 'applies to a particular individual' is covered by Exemption 6, regardless of the type of file in which it is contained."). Accordingly, the autopsy reports meet Exemption 6's threshold inquiry (whether the information is contained in a type of file covered by the exemption). *See Charles v. Off. of Armed Forces Med. Examiner*, 935 F. Supp. 2d 86, 97 (D.D.C. 2013) (concluding similarly).

Next, in considering whether an agency has properly invoked Exemption 6 to those files, courts must balance the privacy interest in nondisclosure against the public interest in the release of the information. *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999). Notably, "Exemption 6 is designed to protect personal information in public records, even if it is not embarrassing or of an intimate nature[.]" *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989). To properly withhold records under Exemption 6, the agency must establish that disclosure of the records "would compromise a substantial, as opposed to *de minimis*, privacy interest." *Id.* at 874. "A substantial privacy interest is anything greater than a *de minimis* privacy interest." *Multi Ag. Media LLC*, 515 F.3d at 1229–30.

As for the second half of the balancing equation, it is the requester who must articulate a significant public interest. *Schwaner v. Dep't of Army*, 696 F. Supp. 2d 77, 82 (D.D.C. 2010) (EGS). In the FOIA context, the "only relevant public interest" in the balancing analysis is "the extent to which disclosure of the information sought would she[d] light on the agency's

6

performance of its statutory duties or otherwise let citizens known what their government is up to." *Dep't of Def. v. FLRA*, 510 U.S. 487, 497 (1994) (citation and internal quotation marks omitted). Although an "agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible," *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted), the Court is guided by the instruction that, "under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the Act," *Wash. Post Co.*, 690 F.2d at 261.

Briefly, the Court shall explain how Defendant came to possess the autopsy reports sought by Plaintiff in this case. *See* Compl., Ex. 1 at 8 (FOIA request for copies of autopsy reports "concerning any VAERS-reported deaths following COVID-19 vaccination").

The Vaccine Adverse Event Reporting System ("VAERS") is a "national vaccine safety surveillance program" managed by the FDA and the Centers for Disease Control and Prevention ("CDC"). Nair Decl. ¶ 7. As explained by Dr. Nair, the reporting system's purpose is "to detect possible signals of adverse events (side effects) that occur after the administration of U.S. licensed or authorized vaccines." *Id.*; *see also* FDA, *VAERS Overview* https://www.fda.gov/vaccines-blood-biologics/vaccine-adverse-events/vaers-overview (last updated Aug. 12, 2021). VAERS accepts adverse event reports from anyone, including healthcare providers, vaccine manufacturers, vaccine recipients, and state immunization programs. Nair Decl. ¶ 7. The FDA's Emergency Use Authorizations for the COVID-19 vaccine require vaccination providers and manufacturers to report certain adverse events to VAERS, including deaths. *Id.* ¶ 8. If an individual dies after receiving a COVID-19 vaccine, an autopsy report can be submitted to VAERS along with the adverse event report. *Id.* ¶ 9. With respect to the autopsy reports at issue in this case, these reports appear to have been submitted to VAERS by state and local public health agencies. *Id.* ¶ 16; Def.'s Mot. at 29.

Relying on Exemption 6, Defendant withheld 539 autopsy reports in their entirety to "adequately safeguard the identities of the decedents and their surviving family members." Hyder Decl. ¶ 11. Plaintiff concedes that some of the information contained in the autopsy reports is exempt under Exemption 6—including the decedent's name and date of birth—but otherwise maintains that the agency cannot withhold the autopsy reports in full. Pl.'s Cross-Mot. at 11–13.

Beginning with the purported privacy interests at stake, Defendant asserts that the surviving family members of the decedents have a substantial privacy interest in the nondisclosure of the autopsy reports. Def.'s Mot. at 15. Disclosure of these autopsy reports, argues Defendant, would subject the surviving kin to inquiries from the media or general public, constituting "unwanted contact and publicity." *Id.* at 20. Additionally, disclosure of the reports will have an emotional effect on the decedents' family members, as the reports "describe the imperiled state of decedents' bodies at the time of death" and contain "highly sensitive information and potentially embarrassing information [about the decedent]." Def.'s Reply at 13.

Courts have recognized that "close relatives of a deceased person retain a certain amount of privacy interests after the decedent has passed away." *Mobley v. CIA*, 924 F. Supp. 2d 24, 70 (D.D.C. 2013) (BAH); *see Schrecker v. Dep't of Just.*, 254 F.3d 162, 166 (D.C. Cir. 2001) ("[O]ne's own and one's relations' interests in privacy ordinarily extend beyond one's death."); *Blanton v. Dep't of Just.*, 64 F. App'x 787, 789 (D.C. Cir. 2003) ("[W]hile death of an individual reduces the privacy interest, it does not eliminate it."). In the FOIA context, the Supreme Court has recognized family members' "right to personal privacy with respect to their close relative's death-scene images." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 170 (2004). Family members' privacy interests have been expanded to include autopsy reports (and related materials such as x-rays and optical photographs) and audio files of the decedent's final moments.

*See Katz v. Nat'l Archives & Records Admin.*, 862 F. Supp. 476, 485–86 (D.D.C. 1994), *aff'd*, 68 F.2d 1438 (1995) (holding family members had privacy interest in preventing disclosure of both x-rays and optical photographs taken during President John F. Kennedy's autopsy); *Wolk Law Firm v. Nat'l Transp. Safety Bd.*, 392 F. Supp. 3d 514, 527 (E.D. Pa. 2019) (holding relatives had privacy interest in "death scene photographs, autopsy reports, and medical case reviews"); *N.Y. Times Co. v. Nat'l Aeronautics & Space Admin.*, 782 F. Supp. 628, 633 (D.D.C. 1991) (NHJ) (concluding family members had privacy interest in audio tapes of the astronauts aboard Challenger space shuttle). Courts have also recognized a "substantial privacy interest in avoiding 'unwanted contact following a FOIA disclosure.'" *Perioperative Services & Logistics, LLC v. Dep't of Veterans Affairs*, 57 F.4th 1061, 1067–68 (D.C. Cir. 2023) (quoting *ACLU v. Dep't of Just.*, 655 F.3d 1, 11 (D.C. Cir. 2011) (collecting cases)).

Addressing the privacy interests raised by Defendant, Plaintiff maintains that the disclosure of the autopsy reports would not "shock the sensibilities of surviving kin" because the reports do not involve "macabre subject matter like a gunshot wound or gruesome plane crash." Pl.'s Cross-Mot. at 9–10. Additionally, Plaintiff argues that the identity of the decedent (and by extension their surviving family members) can be protected by redacting any "personally identifying information." *Id.* at 11. In this regard, Plaintiff maintains that it is "not [seeking] information that will lead to identifying any" decedent or their family members. *Id.*

Turning to the alleged public interest, Plaintiff explains that access to the autopsy reports will "allow it to contribute to the public understanding of the government's vaccine safety programs." *Id.* at 14. Disclosure of these autopsy reports, according to Plaintiff, would "potentially reveal the specific vaccine-induced adverse events experienced by the decedents directly preceding their deaths." *Id.* at 14–15. This information then could be "helpful" to

9

"independent researchers and professionals who are studying vaccine safety and vaccine injuries." Pl.'s Reply at 9.  Defendant disagrees.  It argues that the autopsy reports cannot "contribute to the public understanding of the government's vaccine safety programs" because the reports do not "establish a causal link between the overall risk of death and a COVID-19 vaccine."  Def.'s Mot. at 24 (citing Nair Decl. ¶¶ 7, 14).

In consideration of the arguments presented by the parties, the Court concludes that the decedents' family members have a clear privacy interest in preventing the full disclosure of the autopsy reports.  There is also a public interest at stake in releasing the autopsy reports, to the extent that any of the reports conclude that a COVID-19 vaccine caused the adverse event (in this case, death).  *See* Nair Decl. ¶ 10 (acknowledging that autopsy report could conclude as such).

But with the present record, the Court cannot find that Defendant was justified in invoking Exemption 6 to withhold the autopsy reports in their entirety because Defendant has not satisfied its burden as to segregability.  *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) ("Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents withheld.").  The Court's reasoning is explained below.

B. Segregability

FOIA requires that "[a]ny reasonably segregable portion of [the] record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  "The FOIA makes clear that the fact that a responsive document fits within an applicable exemption does not automatically entitle the [agency] to withhold the *entire* record."  *Charles v. Off. Armed Forces Med. Examiner*, 979 F. Supp. 2d 35, 42 (D.D.C. 2013) (KBJ).  If an agency seeks to withhold a responsive record in full, the agency "bears the burden of demonstrating that

the nonexempt portions of the document are so inextricable from the exempt portions that document is not reasonably segregable." *Id.*; *see Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) ("It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.").

To satisfy this burden, the agency must provide a "detailed justification" and not merely make "conclusory statements" to support its segregability determination. *Mead Data Cent., Inc.*, 566 F.2d at 261. A "blanket declaration" that the facts are so intertwined "to prevent disclosure under the FOIA" does not suffice. *Wilderness Soc'y v. Dep't of Interior*, 344 F. Supp. 2d 1, 19 (D.D.C. 2004) (RBW). Rather, "for *each* entry the defendant is required to specify in detail which portions of the documents are disclosable and which are allegedly exempt." *Id.* (citation and internal quotation marks omitted).

In this regard, Defendant's declaration is deficient. Its declarant states that the information in the autopsy reports "is not reasonably segregable" because the "density of potentially identifying nature of even seemingly non-identifying information" makes "partial disclosure insufficient to protect the privacy interests of surviving family members." Hyder Decl. ¶ 20. The declarant does not, for example, explain which portions of the autopsy reports are exempt and which portions are not exempt. *See Mead Data Cent., Inc.*, 566 F.2d at 260. Nor does the declarant explain how the exempt portions are so "inextricably linked" to the nonexempt portions such that withholding the reports in full is justified under Exemption 6. *See id.* In all, Defendant has not satisfied its burden in demonstrating that the withheld records contain no reasonably segregable information. Accordingly, the Court shall deny without prejudice Defendant's motion for summary judgment as to its claimed exemption and segregability. *Sussman*, 494 F.3d at 1116 ("Before approving the

11

<mark>Case 1:22-cv-03572-CKK   Document 26   Filed 08/30/24   Page 12 of 13</mark>

application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld."). The Court shall order Defendant to submit a *Vaughn* Index, explaining in greater detail which portions of the autopsy reports are exempt under Exemption 6, which portions are not exempt under Exemption 6, and how the agency conducted its segregability analysis. Once the *Vaughn* Index is submitted, the Court shall permit the parties to file renewed motions for summary judgment.

## IV.   CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's [21] Motion for Summary Judgment and further **GRANTS IN PART** and **DENIES IN PART** Plaintiff's [22] Cross-Motion for Summary Judgment. Specifically, the Court orders as follows:

The Court **GRANTS** summary judgment in favor of Defendant as to the adequacy of the agency's search for responsive records.

Next, the Court **DENIES WITHOUT PREJUDICE** Defendant's motion for summary judgment as to its claimed FOIA exemption and segregability, and **GRANTS** Plaintiff's cross-motion for summary judgment insofar as it challenges the agency's segregability analysis. By or before **October 18, 2024**, Defendant shall supplement the record by filing a *Vaughn* Index supporting its claimed FOIA exemption (Exemption 6). Therein, Defendant shall identify which portions of the autopsy reports are exempt under Exemption 6, which portions are not exempt under Exemption 6, and how the agency conducted its segregability analysis.

Following the submission of Defendant's *Vaughn* Index by or before **October 18, 2024**, the Court will set a new briefing schedule, permitting the parties to file renewed cross-motions for summary judgment addressing the remaining issues in this case.

**SO ORDERED**.

Date: August 30, 2024

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge