UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INFORMED CONSENT ACTION
NETWORK,

       Plaintiff,

   v.

FOOD AND DRUG ADMINISTRATION,

       Defendant.

Civil Action No. 22-3572 (CKK)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

BACKGROUND ................................................................................................................ 2

LEGAL STANDARD....................................................................................................... 5

ARGUMENT .................................................................................................................... 7

   I.  FDA HAS ACCURATELY IDENTIFIED THE INFORMATION SUBJECT TO
   EXEMPTION 6. ........................................................................................................... 7

   II.  THE REMAINING INFORMATION IS INEXTRICABLY INTERTWINED WITH
   INFORMATION SUBJECT TO EXEMPTION 6 AND CONTAINS MINIMAL OR NO
   INFORMATION CONTENT........................................................................................ 13

CONCLUSION................................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*ACLU v. Dep't of Just.*,
   655 F.3d 1 (D.C. Cir. 2011) ........................................................................ 12

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................................... 5

*Carter v. Dep't of Com.*,
   830 F.2d 388 (D.C. Cir. 1987) .................................................................... 12

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...................................................................................... 5

*Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*,
   746 F.3d 1082 (D.C. Cir. 2014) ............................................................... 5, 6

*Concepcion v. FBI*,
   606 F. Supp. 2d 14 (D.D.C. 2009) ............................................................. 7

*Dep't of Just. v. Reps. Comm. for Freedom of the Press*,
   489 U.S. 749 (1989) ...................................................................................... 5

\*   *Dep't of State v. Wash. Post Co.*,
   456 U.S. 595 (1982) ............................................................................ 7, 8, 10

*Elec. Frontier Found. v. Dep't of Just.*,
   739 F.3d 1 (D.C. Cir. 2014) .......................................................................... 5

*Flyers Rights Educ. Fund, Inc. v. Fed. Aviation Admin.*,
   71 F.4th 1051 (D.C. Cir. 2023) ................................................................... 6

*Forest Guardians v. Fed. Emergency Mgmt. Agency*,
   410 F.3d 1214 (10th Cir. 2005) ............................................................ 11-12

*Informed Consent Action Network v. FDA*,
   Civ. A. No. 24-1761 (CJN), 2024 WL 4836405 (D.D.C. Nov. 20, 2024) ...................... 14-15

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009) ..................................................................... 6

*Lepelletier v. FDIC*,
   164 F.3d 37 (D.C. Cir. 1999) ....................................................................... 8

*Long v. Dep't of Just.*,
   778 F. Supp. 2d 222 (N.D.N.Y. 2011) .................................................... 3, 2

*Marzen v. Dep't of Health & Hum. Servs.*,
   825 F.2d 1148 (7th Cir. 1987) .................................................................... 12

*Mead Data Ctr., Inc. v. Dep't of Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) ................................................................ 14

*Media Rsch. Ctr. v. Dep't of Just.*,
   818 F. Supp. 2d 131 (D.D.C. 2011) ........................................................ 5-6

*Nat'l Cable Television Ass'n v. FCC*,
   479 F.2d 183 (D.C. Cir. 1973) ................................................................. 5

*Nat'l Sec. Couns. v. CIA*,
   206 F. Supp. 3d 241 (D.D.C. 2016) ......................................................... 6

\*   *Perioperative Servs. & Logistics, LLC v. Dep't of Veterans Affs.*,
   57 F.4th 1061 (D.C. Cir. 2023) ................................................ 6, 12, 13, 14

*Reliant Energy Power Generation, Inc. v. FERC*,
   520 F. Supp. 2d 194 (D.D.C. 2007) ......................................................... 5

*Ryan v. FBI*,
   174 F. Supp. 3d 486 (D.D.C. 2016) ......................................................... 5

*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007) ............................................................ 6, 7

*Tao v. Freeh*,
   27 F.3d 635 (D.C. Cir. 1994) .................................................................. 5

*Vaughn v. Rosen*,
   484 F.2d 820 (D.C. Cir. 1973) ................................................................. 6

\*   *Wash. Post Co. v. Dep't of Health & Hum. Servs.*,
   690 F.2d 252 (D.C. Cir. 1982) ............................................... 7, 8, 10, 11

*Weisberg v. Dep't of Just.*,
   627 F.2d 365 (D.C. Cir. 1980) ................................................................. 5

*Weisberg v. Dep't of Just.*,
   705 F.2d 1344 (D.C. Cir. 1983) ............................................................... 5

**Statutes**

5 U.S.C. § 552 ........................................................... 1, 2, 3, 5, 6, 7, 13

42 U.S.C. § 300aa-10 ................................................................................ 3

42 U.S.C. § 300aa-14 ................................................................................ 3

42 U.S.C. § 300aa-25 ................................................................................ 3

**Rules**

Fed. R. Civ. P. 56 ..................................................................................... 5

iv

**Regulations**

21 C.F.R. § 20.63 ................................................................................................................ 3, 4

42 C.F.R. § 100.3 .................................................................................................................. 3

Defendant, the United States Food and Drug Administration ("FDA"), respectfully renews its motion for summary judgment.  This case stems from a request submitted by Plaintiff Informed Consent Action Network ("Plaintiff" or "ICAN") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for copies of autopsy reports concerning any Vaccine Adverse Event Reporting System ("VAERS" or "Reporting System") reported deaths following COVID-19 vaccination. Declaration of Beth Brockner Ryan ("Brockner Ryan Decl.," ECF No. 21-3) ¶ 6; *see also* Pl.'s FOIA Request (ECF No. 1-1) at 8.  FDA received a list of 595 Reporting System ID numbers from the Centers for Disease Control and Prevention ("CDC") for death reports submitted after COVID-19 vaccination that had autopsy reports associated with them.  Brockner Ryan Decl. ¶ 10. CDC advised FDA's Center for Biologics Evaluation and Research that to obtain the requested autopsy records, the Center would have to manually pull the Reporting System records for each Reporting System ID and then extract the autopsy reports.  *Id.*  FDA collected all the information in the Reporting System files associated with the 595 identification numbers provided by the CDC and identified a total of 539 autopsy reports responsive to the FOIA request (the "Autopsy Reports").  *Id.* ¶ 11.  After reviewing the Autopsy Reports, FDA determined that they were exempt from public disclosure under FOIA Exemption 6, because disclosure of the requested records could result in a clearly unwarranted invasion of personal privacy for the decedents' families, 5 U.S.C. § 552(b)(6), and is reasonably likely to result in foreseeable harm to the decedents' families.  Declaration of Elizabeth Teter-Gossmann ("Teter-Gossmann Decl.," attached) ¶ 13.

The Court's prior Memorandum Opinion and Order (ECF No. 26) granted summary judgment in Defendant's favor with respect to the adequacy of the FDA's search.  Order (ECF No. 26) at 12.  As for Defendant's invocation of Exemption 6, the Court "f[ound] that the autopsy reports withheld by the FDA constitute, at a minimum, 'similar files'" to "personnel and medical

1

files" protected under FOIA Exemption 6 and FDA's regulations. *Id.* at 6. The Court also "conclude[d] that the decedents' family members have a clear privacy interest in preventing the full disclosure of the autopsy reports" and that "[t]here is also a public interest at stake in releasing the autopsy reports, to the extent that any of the reports conclude that a COVID-19 vaccine caused the adverse event (in this case, death)." *Id.* at 10. After the prior round of briefing, "the Court [could not] find that Defendant was justified in invoking Exemption 6 to withhold the autopsy reports in their entirety because Defendant ha[d] not satisfied its burden as to segregability." *Id.* FDA respectfully submits that it has now met its burden on segregability by providing its *Vaughn* index (ECF No. 28-1) and Teter-Gossmann Declaration. FDA respectfully requests that this Court grant summary judgment in its favor.

## BACKGROUND

On November 29, 2021, Plaintiff submitted a FOIA request to FDA seeking "copies of autopsy reports concerning any VAERS-reported deaths following COVID-19 vaccination." Brockner Ryan Decl. (ECF No. 21-3) ¶ 6; *see also* Pl.'s FOIA Request (ECF No. 1-1) at 8. The Reporting System is "a national vaccine safety surveillance program co-[administered] by" the CDC and FDA. *Long v. Dep't of Just.*, 778 F. Supp. 2d 222, 228 (N.D.N.Y. 2011); *see also* Declaration of Narayan Nair ("Nair Decl.," ECF No. 21-5) ¶ 7. The Reporting System "is a post-marketing safety surveillance program" that collects "information about possible side effects that occur after the administration of vaccines licensed [or authorized] for use in the United States," including the COVID-19 vaccines.[1] *Long*, 778 F. Supp. 2d at 228; *see also* Nair Decl. ¶ 7.

---

[1] FDA, *Vaccine Adverse Events*, https://www.fda.gov/vaccines-blood-biologics/report-problem-center-biologics-evaluation-research/vaccine-adverse-events (updated Jan. 27, 2021).

2

FDA denied Plaintiff's request in full initially on the grounds that the request sought records that were protected from disclosure by FOIA Exemptions 3 and 6, 5 U.S.C. §§ 552(b)(3), (b)(6). Specifically, FDA responded that the Autopsy Reports were exempt from disclosure under the National Childhood Vaccine Injury Act ("Vaccine Injury Act") of 1986, as amended, 42 U.S.C. §§ 300aa-10, *et seq.*,[2] as well as under FOIA Exemption 6, 5 U.S.C. § 552(b)(6), and 21 C.F.R. § 20.63, which exempts from public disclosure personnel, medical, and similar files where disclosure would result in a clearly unwarranted invasion of personal privacy. On October 7, 2022, Plaintiff appealed, challenging the adequacy of FDA's search and its assertion that Exemptions 3 and 6 justify withholding the Autopsy Reports in their entirety. Pl.'s Appeal (ECF No. 1-1) at 2. FDA in response advised that it needed to consult with the CDC, as that agency had a substantial interest in the records subject to the appeal, and as a result, it might take longer than usual to process the appeal. Compl. (ECF No. 1) ¶ 8. Plaintiff filed this lawsuit six weeks later, alleging that FDA violated the FOIA by not making a timely final determination on its appeal, failing to establish the adequacy of its search, and improperly withholding responsive records. *Id.* ¶¶ 10–19.

---

[2]    As remains the case (*see* Def.'s 1st Open. Br. (ECF No. 21-1) at 8 n.2), FDA is not at this time asserting Exemption 3, although FDA would assert Exemption 3 if the necessary predicate action occurs. Because COVID-19 vaccines are not currently included in the Vaccine Injury Table, *see* 42 C.F.R. § 100.3(a), reporting of deaths following the administration of COVID-19 vaccines is not mandated by Section 2125(c)(2) of the Vaccine Injury Act, *see* 42 U.S.C. § 300aa-25(c)(2). But if the Secretary of Health and Human Services adds COVID-19 vaccines to the Vaccine Injury Table, then reporting of alleged adverse events, including at least some deaths following administration of these vaccines, will likely be mandated by 42 U.S.C. § 300aa-25(b)(1). This can occur if (1) Congress enacts an excise tax on those vaccines, (2) CDC recommends them for routine administration to children or pregnant persons, and (3) the Secretary of the Health and Human Services publishes a notice of coverage in the Federal Register. *See* 42 C.F.R. §§ 100.3(a), (e)(8); *see also* 42 U.S.C. § 300aa-14(e). If COVID-19 vaccines are added to the Vaccine Injury Table, autopsy reports like those sought by Plaintiff would be exempt from disclosure under both FOIA Exemption 3, pursuant to 42 U.S.C. § 300aa-25(c), and FOIA Exemption 6. *See Long*, 778 F. Supp. 2d at 234–35 (finding that even if Exemption 3 is inapplicable to certain information submitted under the Reporting System, it would be exempt under Exemption 6); 42 U.S.C. § 300aa-25(c)(2).

3

FDA filed its Answer (ECF No. 13) on January 17, 2023, and the parties have briefed summary judgment once before.  In response to the Court's prior Order, FDA "performed a careful page-by-page, line-by-line review of each autopsy report responsive to Plaintiff's FOIA Request to determine whether all of the information contained therein was properly withheld under FOIA Exemption 6."  Teter-Gossmann Decl. ¶ 9.  This process culminated in the *Vaughn* index that FDA filed with the Court (ECF No. 28-1).  *Id.* ¶¶ 10–13.  "The *Vaughn* Index identifies the contents of each autopsy report responsive to Plaintiff's FOIA Request; the FOIA exemption applicable to each autopsy report; and the foreseeable harm that FDA expects to ensue if any of the withheld information were disclosed."[3]  *Id.* ¶ 11.  "Each entry of the *Vaughn* index identifies the specific material subject to Exemption 6, and each entry identifies the specific material that, while not itself subject to Exemption 6, is inextricably intertwined with exempt portions and, without production of accompanying material subject to Exemption 6, would have minimal or no information content."  *Id.* ¶ 12.  "FDA expects that disclosing any of the information protected by Exemption 6 is reasonably likely to result in foreseeable harm to the decedents' families because, under a mosaic theory, individuals would likely be able to piece together this information from the autopsy reports to determine the decedents' identities."  *Id.* ¶ 13; *see also* Hyder Decl. ¶¶ 12–19 (further describing how the decedents and their families may be identified).

FDA respectfully submits that it has now met its burden on segregability and renews its motion for summary judgment.

---

[3]      Indeed, the *Vaughn* index is so comprehensive that it is overinclusive, containing descriptions not only of the 539 responsive records, but also of additional nonresponsive records, as FDA has explained and identified.  *See* Teter-Gossmann Decl. ¶ 10 (identifying the nonresponsive records unintentionally included in FDA's *Vaughn* index).

**LEGAL STANDARD**

FOIA cases are typically decided on motions for summary judgment. *Ryan v. FBI*, 174 F. Supp. 3d 486, 490 (D.D.C. 2016), *summ. aff'd*, No. 16-5108, 2016 WL 6237841 (D.C. Cir. Sept. 16, 2016). Summary judgment is granted when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is "material" when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In the FOIA context, an agency is entitled to summary judgment if it "proves that it has fully discharged its obligations" under FOIA. *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007) (citing *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)). To do so, an agency must prove that each document responsive to the request(s) has been produced, is unidentifiable, or is wholly exempt from disclosure. *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)).

If redacting or withholding records, the agency must prove that its claimed exemptions apply. *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) (citing *Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989)); *Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 7 (D.C. Cir. 2014); 5 U.S.C. § 552(a)(4)(B). To do so, the agency must submit evidence proving that it is "logical" or "plausible" that the invoked FOIA exemption(s) apply. *Media Rsch. Ctr. v. Dep't of Just.*, 818 F.

Supp. 2d 131, 137 (D.D.C. 2011) (citing *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).  An agency can meet this burden by submitting affidavits, declarations, a *Vaughn* index, or any combination of these methods.  *Nat'l Sec. Couns. v. CIA*, 206 F. Supp. 3d 241, 249 (D.D.C. 2016), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020); *see also Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973).  When relying on an affidavit or declaration, the evidence must "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and [that the evidence is] not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *CREW*, 746 F.3d at 1088 (quoting *Larson*, 565 F.3d at 862).

If an agency withholds a record in full to protect the identity of someone, it need not demonstrate that "every word and punctuation mark would disclose the identity of someone." *Perioperative Servs. & Logistics, LLC v. Dep't of Veterans Affs.*, 57 F.4th 1061, 1069 (D.C. Cir. 2023).  That type of segregability analysis "misapprehends the [government's] FOIA obligations." *Id.*  Instead, an agency "need not disclose a redacted version of [a record] if the unredacted markings would 'have minimal or no information content.'"  *Id.*; *see also* 5 U.S.C. § 552(b) (requiring disclosure of "reasonably segregable portion[s] of a record," as opposed to disclosure of any segregable portion).  Lastly, when an agency demonstrates that a record contains exempt material, it is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material."  *Perioperative*, 57 F.4th at 1068–69 (alteration in original; quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)); *see also Flyers Rights Educ. Fund, Inc. v. Fed. Aviation Admin.*, 71 F.4th 1051, 1057–58 (D.C. Cir. 2023) ("When an agency demonstrates that records contain exempt information, as the [agency] has done, it is

'entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material.'" (quoting *Sussman*, 494 F.3d at 1117)).

ARGUMENT

As discussed above, *see supra* at 1–2, the Court has already determined a great many issues of relevance to this motion. What remains for the Court to decide is whether the additional information that FDA has now provided—i.e., the Declaration of Elizabeth Teter-Gossmann (attached) and related *Vaughn* index (ECF No. 28-1)—satisfies FDA's burden on segregability. Below, FDA begins by demonstrating that the information that it has identified on its *Vaughn* index as subject to Exemption 6 is indeed subject to Exemption 6, and then proceeds to demonstrate that the information it has identified as not subject to Exemption 6—but as inextricably intertwined with exempt portions and with minimal or no information content— indeed qualifies as such.

**I.      FDA HAS ACCURATELY IDENTIFIED THE INFORMATION SUBJECT TO EXEMPTION 6.**

As the Court has previously explained here, "FOIA Exemption 6 protects information contained in 'personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.'" Order (ECF No. 26) at 5 (quoting 5 U.S.C. § 552(b)(6)). "The term 'similar files' is construed broadly, and it is 'intended to cover detailed Government records on an individual which can be identified as applying to that individual." *Id.* (quoting *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)). "The threshold inquiry is fairly minimal, such that [a]ll information which applies to a particular individual is covered by Exemption 6, regardless of the type of file in which it is contained." *Id.* (internal quotation marks omitted; quoting *Concepcion v. FBI*, 606 F. Supp. 2d 14, 35 (D.D.C. 2009)); *see also Wash. Post Co. v. Dep't of Health & Hum. Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982) ("All information which

7

'applies to a particular individual' is covered by Exemption 6, regardless of the type of file in which it is contained." (quoting *Wash. Post*, 456 U.S. at 602)).

After reviewing relevant authorities, the Court previously found that the autopsy reports "constitute, at a minimum, 'similar files,'" and that "[p]atently, each autopsy report contains information attributable to a specific individual." Order (ECF No. 26) at 6. The Court also then "balance[d] the privacy interest in nondisclosure against the public interest in the release of the information." *Id.* (citing *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999)). The "Court conclude[d] that the decedents' family members have a clear privacy interest in preventing the full disclosure of the autopsy reports." *Id.* at 10.

With the Court's prior analysis in mind, FDA analyzed all Autopsy Reports and deemed protected by Exemption 6 the following "information which 'applies to a particular individual,'" *see Wash. Post*, 690 F.2d at 260 (quoting *Wash. Post*, 456 U.S. at 602):

- Decedent's full name, *see, e.g.*, *Vaughn* Index (ECF No. 28-1) at 2;

- Decedent's maiden name, *see, e.g.*, *id.* at 179;

- Decedent's date and/or place of birth, *see, e.g.*, *id.* at 2; *id.* at 20;

- Decedent's address, *see, e.g.*, *id.* at 2;

- Decedent's telephone number, *see, e.g.*, *id.*;

- Decedent's email address, *see, e.g.*, *id.*;

- Decedent's race, *see, e.g.*, *id.*;

- Decedent's ethnicity or ancestry, *see, e.g.*, *id.* at 4; *id.* at 556;

- Decedent's tribe of membership, *see, e.g.*, *id.* at 252;

- Decedent's sex, *see, e.g.*, *id.* at 2;

- Decedent's height, weight, and/or hair and eye color, *see, e.g.*, *id.* at 293;

- Decedent's identifying marks, scars, and/or tattoos, *see, e.g.*, *id.* at 17;

8

- Decedent's social security number, *see, e.g.*, *id.* at 27;

- Decedent's passport number, *see, e.g.*, *id.* at 430;

- Decedent's driver's license information (e.g., driver's license number), *see, e.g.*, *id.* at 179; *id.* at 253;

- Decedent's date of vaccination, *see, e.g.*, *id.* at 2;

- Decedent's date of service, *see, e.g.*, *id.* at 298;

- Decedent's immunizations records, *see, e.g.*, *id.* at 30;

- The facility information where the decedent was vaccinated, *see, e.g.*, *id.* at 2;

- Information about the decedent's body, *see, e.g.*, *id.*;

- The date, time, and/or place of death, *see, e.g.*, *id.*;

- Decedent's cause of death, *see, e.g.*, *id.* at 5;

- Decedent's method and/or place of disposition, *see, e.g.*, *id.* at 148; *id.* at 228;

- Decedent's occupation, *see, e.g.*, *id.* at 2;

- Decedent's education, *see, e.g.*, *id.* at 307;

- Decedent's marital status, *see, e.g.*, *id.* at 2;

- Decedent's veteran status and/or Department of Defense ID number, *see, e.g.*, *id.* at 158; *id.* at 386;

- The names and/or contact information (e.g., address, telephone number, email address) of the decedent's parents, spouse, relative, neighbor, and/or next of kin, *see, e.g.*, *id.*; *id.* at 33; *id.* at 42; *id.* at 205; *id.* at 299; *id.* at 306;

- Decedent's family members' dates of birth, *see, e.g.*, *id.* at 395;

- Information identifying the decedent's funeral home, *see, e.g.*, *id.* at 2;

- Decedent's full medical history, *see, e.g.*, *id.*;

- Decedent's full list of medications, *see, e.g.*, *id.*;

- Decedent's allergies, *see, e.g.*, *id.*;

- Decedent's chronic/long-standing health conditions, *see, e.g.*, *id.*;

9

- Decedent's toxicology and/or laboratory test results, *see, e.g.*, *id.*; *id.* at 155;

- Circumstances as to how decedent died, *see, e.g.*, *id.* at 3;

- The personal information of the person who filled out the document (e.g., name and address), *see, e.g.*, *id.* at 2; *id.* at 4;

- Date and time next of kin was notified of death, *see, e.g.*, *id.* at 247; and

- Decedent's doctor's name, *see, e.g.*, *id.* at 356.

In recognition that "[a]ll information which 'applies to a particular individual' is covered by Exemption 6, regardless of the type of file in which it is contained," *Wash. Post*, 690 F.2d at 260 (quoting *Wash. Post*, 456 U.S. at 602), Plaintiff has previously acknowledged that FDA is permitted "to redact any personally identifying information." Pl.'s 1st Open. Br. (ECF No. 22-1) at 12–13; *see also id.* ("If FDA were to redact any personally identifying information, any concerns about the ability to identify the decedents and their families is eliminated."); *id.* at 14 ("Crucially, ICAN is not seeking the majority of the 'identifying' information cited by the FDA."). For instance, Plaintiff has acknowledged that "FDA can redact the decedent's name, the date of examination, details about the doctor performing the autopsy, the name and location of the funeral home and any family members' name or contact information," as well as "characteristics such as the decedents' eye and hair color." *Id.* at 13. In its prior reply, Plaintiff criticized FDA for "mischaracterizing" its argument and emphasized, "[t]o be clear, ICAN argues that the non-personally identifying portions of the Autopsy Reports can be reasonably segregated from the personally identifying portions of the reports." Pl.'s 1st Reply (ECF No. 25) at 4; *see also id.* at 11 ("ICAN has made clear that it seeks the Autopsy Reports with personally identifying information redacted."). Accordingly, FDA understands that Plaintiff has waived its challenge to any of the personally identifying information identified above and has narrowed its FOIA request to seeking only the Autopsy Reports with personally identifying information redacted. Pl.'s 1st Reply at 11.

10

But, as explained below, there would simply be no relevant information content if FDA were to produce the Autopsy Reports after redacting all personal information.

To the extent that Plaintiff attempts to change its position or otherwise dispute whether the information listed above is indeed personally identifying information, FDA notes that all this information is information applying to a particular individual.  *See Wash. Post*, 690 F.2d at 260. "The requested [ ] autopsy reports contain various pieces of information that are readily understood as identifying the person being discussed by the report."  Declaration of John Hyder ("Hyder Decl.," ECF No. 21-4) ¶ 12.  Even "seemingly innocuous pieces of information [ ] can be used to determine the decedents' identities."  *Id.*  FDA explained that "[a]lone, any one of these [seemingly innocuous] pieces of information may not be used to identify an individual, but when combined with information in the public domain, they are likely to reveal the decedents' identities." *Id.* ¶ 14. "Once the decedent is identified, surviving family members can be identified through readily accessible public information."  *Id.*  "[T]he requested [ ] autopsy reports must be withheld in full to protect the privacy interests of surviving family members." *Id.* ¶ 19.  FDA has confirmed that, "under a mosaic theory, individuals would likely be able to piece together [ ] information from the autopsy reports to determine the decedents' identities."  Teter-Gossmann Decl. ¶ 13.

Were FDA required to disclose redacted versions of the requested Autopsy Reports, it is highly likely that Plaintiff or other members of the public would be able to identify the decedents discussed in the autopsy records by combining the information disclosed with information in the public domain.  *See, e.g.*, *Forest Guardians v. Fed. Emergency Mgmt. Agency*, 410 F.3d 1214, 1220–21 (10th Cir. 2005) (holding that release of "electronic mapping files" would invade the privacy interest of homeowners even though the invasion would occur only after "manipulat[ion]" of the square and lot numbers "to derive the addresses of policyholders and potential

11

policyholders," because the files contained the specific locations of structures that "could easily lead to the discovery of an individual's name and home address" and subject them to "unwanted and unsolicited mail, if not more"); *Perioperative Servs.*, 57 F.4th at 1067–68 (acknowledging "unwanted contact following a FOIA disclosure" as an impingement on privacy interests that should be taken into account when balancing interests under Exemption 6 (quoting *ACLU v. Dep't of Just.*, 655 F.3d 1, 11 (D.C. Cir. 2011))); *see also* Hyder Decl. ¶¶ 11–20; Teter-Gossmann Decl. ¶ 13.

Courts have recognized situations where redacting identifying information is not adequate to protect the privacy of those being discussed by the records at issue. *See Carter v. Dep't of Com.*, 830 F.2d 388, 391 (D.C. Cir. 1987) ("[B]ecause court cases (and patents actually granted) are already in the public domain, release of certain portions of them, even with names redacted, could easily lead to the revelation of the documents in their entirety, including the identity of the attorneys involved. Therefore, disclosure of this information regarding court cases in response to a request for documents relating to disciplinary proceedings would likely identify these attorneys as easily as would the release of their addresses."). Similarly, the court in *Marzen v. Department of Health & Human Services*, 825 F.2d 1148 (7th Cir. 1987), concluded that redacting identifying characteristics in an autopsy report was not enough to protect the privacy of an infant's surviving family members because the public would be able to ascertain the identity of the infant and "learn the intimate details connected with the family's ordeal." *Id.* at 1152. Thus, the Seventh Circuit held that full withholding of the autopsy reports at issue was appropriate because disclosure "would undermine [the Department of Health and Human Services'] pledge to keep its records confidential." *Id.* at 1154.

So, too, here. All the information noted as subject to Exemption 6 in FDA's *Vaughn* index (bulleted above) has been properly identified as such, and FDA reasonably foresees harm to decedents' family members from disclosure of any portion thereof. Teter-Gossmann Decl. ¶ 13. The same balancing analysis that FDA discussed in detail in its first brief, *see* Def.'s 1st Open. Br. (ECF No. 21-1) at 15–33, demands that FDA withhold the specific information identified above.

## II.    THE REMAINING INFORMATION IS INEXTRICABLY INTERTWINED WITH INFORMATION SUBJECT TO EXEMPTION 6 AND CONTAINS MINIMAL OR NO INFORMATION CONTENT.

If an agency withholds a record in full to protect the identity of someone, it need not demonstrate that "every word and punctuation mark would disclose the identity of someone." *Perioperative Servs.*, 57 F.4th at 1069. That type of segregability analysis "misapprehends the [government's] FOIA obligations." *Id.* Instead, an agency "need not disclose a redacted version of [a record] if the unredacted markings would 'have minimal or no information content.'" *Id.* Thus, governing precedent does not require FDA to disclose all non-exempt portions of the Autopsy Reports, but rather only those portions that have more than minimal information content. *Contra* Pl.'s 1st Reply (ECF No. 25) at 5. Indeed, Congress confirmed this by requiring disclosure only of "reasonably segregable portion[s] of a record," not any segregable portion of a record. 5 U.S.C. § 552(b). Here, all remaining portions of the Autopsy Reports contain no or minimal information content. *See* Teter-Gossmann Decl. ¶ 12.

The Court's prior Order (ECF No. 26) found FDA's declaratory support to be deficient to satisfy its burden on segregability. Order at 11–12. FDA has sought to remedy this by providing a *Vaughn* index that is almost 600 pages long (ECF No. 28-1), along with an additional declaration (i.e., the Teter-Gossmann Declaration). FDA's *Vaughn* index identifies the information contained in each Autopsy Report that is subject to Exemption 6, and FDA then confirmed that "all remaining material on the report" is "inextricably intertwined with exempt portions and, without production

13

of accompanying material subject to Exemption 6, 'would have minimal or no information content.'" Teter-Gossmann Decl. ¶ 12, *see also, e.g.*, *Vaughn* Index (ECF No. 28-1) at 2 (internal quotation marks omitted; quoting *Perioperative Servs.*, 57 F.4th at 1069). The *Vaughn* index also details precisely what this remaining material consists of—i.e., "all remaining material on the report" "consists of standardized form language and headings." *See, e.g.*, *id.* The *Vaughn* index proceeds to list various examples. *See, e.g.*, *id.* ("e.g., VAERS toll-free phone number and fax number, 'Information About the Patient Who Received the Vaccine,' 'Information About the Person Completing This Form,' and 'Information About the Facility Where Vaccine was Given'— i.e., the headings themselves"). As these are form documents, there is an unsurprising degree of repetition across FDA's *Vaughn* index. *See generally id.*

There would simply be no relevant information content if FDA were to produce the Autopsy Reports after redacting all personal information. Such a production would result in Plaintiff receiving heavily redacted Autopsy Reports where all that remained was "standardized form language and headings." *Id.* This would not provide Plaintiff with any information beyond what it has already learned—i.e., the number of responsive records. Further, Plaintiff's apparent demand for FDA to produce records that "have minimal or no information content," *Perioperative Servs.*, 57 F.4th at 1069 (quoting *Mead Data Ctr., Inc. v. Dep't of Air Force*, 566 F.2d 242, 261 n.55 (D.C. Cir. 1977)), is not only foreclosed by precedent, *id.*, but is directed at a specific FDA component, the Center for Biologics Evaluation and Research, *see* Brockner Ryan Decl. ¶ 10, which is particularly overburdened right now. *See Informed Consent Action Network v. FDA*, Civ. A. No. 24-1761 (CJN), 2024 WL 4836405, at *1 (D.D.C. Nov. 20, 2024) ("To satisfy the [*Public Health & Medical Professionals. for Transparency v. FDA* ('*PHMPT I*'), Civ. A. No. 21-1058 (N.D. Tex.)] production order, [the Center] was required to produce at least 90,000 pages per

14

month from July 2023 to November 2023.    And to satisfy the [*Public Health & Medical Professionals. for Transparency v. FDA* ('*PHMPT II*'), Civ. A. No. 22-0915 (N.D. Tex.)] production order by the court's June 2025 deadline, [it] will need to produce at least 230,000 pages per month between now and then.  This unprecedentedly demanding production schedule—which has prompted the FDA to hire new employees and substantially reallocate its existing staff—far exceeds a 'predictable' agency workload and thus constitutes 'exceptional circumstances' within the meaning of FOIA." (citations omitted)); *see also* Mem. Op. & Order, *PHMPT I*, *supra*, ECF No. 101 (subsequently on December 6, 2024, ordering CBER to produce an additional set of records, estimated to be over 500,000 pages, held by the court to be responsive, by the same production deadline ordered in *PHMPT II*).  FDA hopes that Plaintiff, which is well-familiar with the challenges facing the Center today, having itself filed approximately eleven of the lawsuits in which FDA has sought stays of the Center's FOIA obligations in light of the *PHMPT I* and *PHMPT II* productions orders, will give due consideration to the burden it is seeking to impose upon the agency.  *See* Def.'s Br. in Supp. of Mot. to Stay at 12 n.2, *Informed Consent Action Network v. FDA*, Civ. A. No. 24-1906 (CRC) (D.D.C. Nov. 4, 2024), ECF No. 16-1; *see also Informed Consent Action Network v. FDA*, Civ. A. No. 23-0112 (CRC) (D.D.C.); *Informed Consent Action Network v. FDA*, Civ. A. No. 23-0219 (RBW) (D.D.C.); *Informed Consent Action Network v. FDA*, Civ. A. No.  23-0451 (JEB) (D.D.C.); *Informed Consent Action Network v. FDA*, Civ. A. No. 23-1508 (CKK) (D.D.C.); *Informed Consent Action Network v. FDA*, Civ. A. No. 23-3282 (ABJ) (D.D.C.); *Informed Consent Action Network v. FDA*, Civ. A. No. 23-3675 (JMC) (D.D.C.); *Informed Consent Action Network v. FDA*, Civ. A. No. 24-1555 (RCL) (D.D.C.); *Informed Consent Action Network v. FDA*, Civ. A. No. 24-1905 (JDB) (D.D.C.); *Informed Consent Action Network v. FDA*, Civ. A. No. 24-1906 (CRC) (D.D.C.); *Informed Consent Action Network*

*v. FDA*, Civ. A. No. 24-1907 (CRC) (D.D.C.) (folded into 24-1906); *Informed Consent Action Network v. FDA*, Civ. A. No. 24-1908 (CRC) (D.D.C.) (folded into 24-1906).

Further, compelling FDA to disclose these Autopsy Reports, in full or in part, risks harming FDA's ability to collect similar information in the future, which would have serious downstream repercussions in future cases.  *See* Nair Decl. (ECF No. 21-5) ¶ 16 ("State and local public health agencies submitted autopsy reports to VAERS for individuals that received a COVID-19 vaccine prior to death with the understanding that the information in these reports would be kept confidential to the fullest extent of the law.  Disclosure of the requested VAERS autopsy reports would undermine this understanding.  Disclosure of the requested VAERS autopsy reports could also result in a significant decline in voluntary reporting of adverse events and significantly impact FDA's ability to engage in effective post-market safety surveillance of COVID-19 vaccines going forward." (footnote omitted)).  Even beyond the harms to the decedents' family members, FDA reasonably foresees this serious institutional harm ensuing if it is ordered to disclose any portion of the Autopsy Reports.  *Id.*

\*   \*   \*

16

**CONCLUSION**

For the reasons discussed above, FDA properly withheld the Autopsy Reports in their entirety under FOIA Exemption 6.  For all the foregoing reasons, FDA respectfully requests that its renewed motion for summary judgment be granted.

Dated: January 17, 2025                                   Respectfully submitted,

                                                BRIDGET M. FITZPATRICK, D.C. Bar #474946
                                                Acting United States Attorney

                                                BRIAN P. HUDAK
                                                Chief, Civil Division


                                                By:  _____/s/ *Douglas C. Dreier*_____
                                                     DOUGLAS C. DREIER, D.C. Bar #1020234
                                                     Assistant United States Attorney
                                                     601 D Street, NW
                                                     Washington, DC 20530
                                                     (202) 252-2551

                                                *Attorneys for the United States of America*

17